Filed 6/26/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H045792 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 18CR002682) |
| v. | |
| FRANK JONATHAN CASTELLANOS, | |
| Defendant and Appellant. | |

This case concerns the validity of a waiver of the right to appeal where the claim on appeal—a challenge to an electronic search probation condition—depends on a post-waiver change in the law.  (See *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*) [invalidating electronic search probation condition].)

Castellanos pleaded no contest to transporting a controlled substance in March 2018.  He signed a plea form purportedly waiving "all rights regarding state and federal writs and appeals," including "the right to appeal [his] conviction, the judgment, or any other orders previously issued by this court."

The trial court granted a three-year term of probation in April 2018.  The court imposed an electronic search probation condition requiring Castellanos to provide law enforcement with access to any electronic device, including all passwords to any social media accounts and applications.  On appeal, Castellanos claims the condition is unconstitutionally overbroad.  The trial court granted his request for a certificate of probable cause.

After Castellanos filed his opening brief, the California Supreme Court struck down a similar electronic search condition as overbroad.  (*Ricardo P.*, *supra*, 7 Cal.5th

1113.)  Castellanos now contends the search condition imposed on him is overbroad for the reasons set forth in *Ricardo P.*  The Attorney General contends Castellanos waived his right to bring this claim on appeal.  The Attorney General further argues the probation condition is not overbroad under *Ricardo P.*

Because Castellanos's claim relies on a post-waiver change in the law, we hold Castellanos did not enter a knowing and voluntary waiver of the right to appeal from the challenged probation condition.  (*People v. Wright* (2019) 31 Cal.App.5th 749 (*Wright*) [defendant did not waive the right to appeal future sentencing error based on a change in the law of which he was unaware at the time he entered his plea].)  On the merits of the claim, we hold the search condition is not overbroad under *Ricardo P.*  We will affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural Background

The prosecution charged Castellanos with two counts:  Count 1—transporting a controlled substance from one county to another noncontiguous county (Health & Saf. Code, § 11352, subd. (b)); and count 2—possession of a controlled substance for sale (Health & Saf. Code, § 11351).  In March 2018, Castellanos pleaded no contest to count 1 in exchange for a three-year term of probation and the dismissal of count 2.

Castellanos signed and initialed a plea form including the following preprinted waiver language:  "(**Appeal and Plea Withdrawal Waiver**) I hereby waive and give up all rights regarding state and federal writs and appeals.  This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court.  I agree not to file any collateral attacks on my conviction or sentence at any time in the future.  I further agree not to ask the Court to withdraw my plea for any reason after it is entered."  In the plea colloquy, the trial court asked Castellanos if he gave up those rights, and he answered affirmatively.  The court found that Castellanos knowingly, intelligently, and voluntarily waived his rights.

2

In April 2018, the trial court suspended the imposition of sentence, granted Castellanos a three-year term of probation, and imposed the following electronic search condition: "You are to provide the probation officer or any peace officer with access to your cellphone or any electronic device for the purpose of searching social media accounts, applications, photographs, video recordings, email messages, text messages, and voice messages. [¶] Such access includes providing all passwords to any social media accounts and applications upon request. [¶] And you shall submit to such accounts and applications to search at any time without a warrant by law enforcement or any probation officer."

Defense counsel objected to the condition as overbroad as written, adding, "I think if the Court were to modify it, it may not be." The court overruled the objection, finding the search condition "relevant to the charges in this matter as a number of cellphones were located. This is a transportation case. And the Court finds that transportation and possession for sale are items of criminal conduct that frequently involve the use of cellphones as is shown in this matter."

Castellanos timely appealed and requested a certificate of probable cause to challenge the electronic search condition. After the trial court denied his request, we granted his petition for a writ of mandamus and issued an alternative writ. The trial court then granted his request for a certificate of probable cause.

## B. Facts of the Offense

A police officer stopped Castellanos for speeding.[1] Castellanos's girlfriend was a passenger in the car. The officer saw three cell phones in the center console. Castellanos admitted two of the phones were his.

After a K9 search of the car, the officer found a package of 329.9 grams of cocaine in the trunk. Castellanos admitted he was transporting the cocaine to someone in Salinas.

---

[1] We take the facts from the probation report.

3

In the passenger's purse, the officer found a package of 4.1 grams of cocaine, seven ecstasy pills, a glass pipe, and $83 in currency. She admitted the drugs in the purse were hers and she said she intended to sell them. According the probation report, "She stated that investigators would locate[] messages from people asking to buy cocaine," but the report does not make clear whether this statement referred to messages on Castellanos's phones.

## II. DISCUSSION

Castellanos contends the electronic search probation condition is unconstitutionally overbroad under the *Lent*[2] test as applied by *Ricardo P.*, *supra*, 7 Cal.5th at p. 1128. The Attorney General contends Castellanos expressly waived the right to bring this claim, such that we must dismiss the appeal. As to the merits of the claim, the Attorney General argues that the probation condition was reasonable under *Lent* and *Ricardo P.* because the offense involved the use of cell phones. For the reasons below, we hold Castellanos did not waive his right to bring this claim on appeal, but we conclude the probation condition was not overbroad.

### A. *Validity of the Appellate Waiver*

#### 1. *Legal Principles Governing Waiver of Appellate Rights*

Waiver is the voluntary, intelligent, and intentional relinquishment of a known right or privilege. (*Estelle v. Smith* (1981) 451 U.S. 454, 471, fn. 16, quoting *Edwards v. Arizona* (1981) 451 U.S. 477, 482; *People v. Panizzon* (1996) 13 Cal.4th 68, 80 (*Panizzon*)). " '[T]he valid waiver of a right presupposes an actual and demonstrable knowledge of the very right being waived. [Citations.]' " (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662 (*Vargas*), quoting *Jones v. Brown* (1970) 13 Cal.App.3d 513, 519.)

---

[2] *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).

A general waiver of the right to appeal does not preclude an appeal from an unforeseen error that occurs after the waiver is entered because such a waiver is not knowing and intelligent. (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815; *People v. Sherrick* (1993) 19 Cal.App.4th 657, 659; *Vargas*, *supra*, 13 Cal.App.4th at p. 1662.) The same rule applies where the "error" is a ruling contravened by a subsequent change in law. While we construe plea agreements according to general contract principles, a plea is generally deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws. (*Doe v. Harris* (2013) 57 Cal.4th 64, 66.) "That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Ibid.*)

The burden is on the party claiming the existence of the waiver to prove it was clearly established by evidence in the record. (*Wright*, *supra*, 31 Cal.App.5th at p. 754; *Vargas*, *supra*, 13 Cal.App.4th at p. 1662.) "The voluntariness of a waiver is a question of law which appellate courts review de novo." (*Panizzon*, *supra*, 13 Cal.4th at p. 80.)

### 2. *Castellanos Did Not Waive His Right to Appeal the Probation Condition*

The language of the waiver here purported to preclude "all rights" to appeal, including the right to appeal the conviction, the judgment, and any other orders previously issued by the court. For the purposes of appellate waiver analysis, this language sets forth a nonspecific, general waiver. (See *Pannizon*, *supra*, 13 Cal.4th at p. 85, fn. 11 ["I waive my appeal rights," or "I waive my right to appeal any ruling in this case" are examples of general appellate waivers].)

The Attorney General argues that the scope of the waiver expressly includes a challenge to probation conditions, such that the appeal must therefore be dismissed. (See *People v. Becerra* (2019) 32 Cal.App.5th 178, 188 (*Becerra*) [defendant was required to obtain a certificate of probable cause to challenge the enforceability of the appellate waiver because the scope of his appellate waiver expressly included his claim on

5

appeal].)  But the Attorney General's argument conflates the validity of an appellate waiver with the issue of whether a certificate of probable cause is required.  Once the defendant obtains a certificate of probable cause, he may challenge the validity of the appellate waiver, and we may consider the merits of the claim if we determine the waiver is invalid.  "[W]hen a defendant waives the right to appeal as part of a plea agreement, and the waiver's terms encompass the issue the defendant wishes to raise, the defendant must obtain a certificate of probable cause to avoid dismissal of the appeal.  With a certificate of probable cause in hand, the defendant may argue that the waiver is not enforceable as to the issue raised, whether because the waiver was not knowing and intelligent or for some other reason.  And if the reviewing court determines that the waiver is not enforceable, it will reach the merits of the defendant's underlying claim."  (*People v. Espinoza* (2018) 22 Cal.App.5th 794, 803.)  In this case, Castellanos has obtained a certificate of probable cause, so *Becerra* is inapposite.

Furthermore, unlike the challenge raised by the defendant in *Becerra*, Castellanos's claim relies on a subsequent change in law, as the Supreme Court did not file *Ricardo P.* until after Castellanos had filed his appeal in this matter.  The touchstone in considering the validity of a waiver is whether the waiver was voluntary, intelligent, and knowing.  (*Edwards v. Arizona* (1981) 451 U.S. 477, 482.)  This requires actual knowledge of the rights being waived.  (*Vargas*, *supra*, 13 Cal.App.4th at p. 1662.)  But the Attorney General points to nothing in the record to show Castellanos knew he was waiving the right to appeal from the challenged probation condition.  The waiver made no mention of probation conditions, much less the specific probation condition at issue here.  Nor did the waiver purport to waive the right to bring a claim based on future changes in the law.  If the waiver language had included a general waiver of the right to bring a claim based on a future change in the law, the waiver would have been void as against public policy.  (Pen. Code, § 1016.8, subd. (b).)

6

It is especially unlikely that Castellanos knew he could challenge the probation condition based on the new rule set forth in *Ricardo P.* because the California Supreme Court had not yet decided that case. At the time of the plea in this case, the courts of appeal were split on the validity of electronic search probation conditions. (Compare *People v. Appleton* (2016) 245 Cal.App.4th 717 (*Appleton*) [finding electronic search condition unconstitutionally overbroad as written]; *In re J.E.* (2016) 1 Cal.App.5th 795 [upholding electronic search probation condition, but later transferred with orders to vacate in light of *In re Ricardo P.*].) In August 2019, long after Castellanos filed his appeal, the California Supreme Court struck down a similar electronic search probation condition in *Ricardo P.* The court in *Ricardo P.* altered the analytical framework previously applied by lower courts and held that the condition was invalid under the *Lent* test because it lacked a "degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.) *Ricardo P.* thereby effected a change in the law and set forth a new standard that Castellanos could not have anticipated when he entered his waiver. Because this change in the law occurred after Castellanos entered the waiver, it cannot be construed as waiving the right to bring a claim based on that case. (See *Wright*, *supra,* 31 Cal.App.5th at pp. 754-756; see also *Panizzon*, *supra*, 13 Cal.4th at p. 85 [where a defendant's claim was left unresolved by the plea agreement, a general waiver of the right to appeal will not be construed to bar the appeal of sentencing errors that occur subsequent to the plea].)

The dissent asserts Castellanos knowingly waived his right to appeal the search condition because the courts of appeal had published conflicting opinions on the validity of electronic search conditions. The dissent further asserts that the Supreme Court's opinion in *Ricardo P.* simply applied the principles already established in *Lent*. The dissent reasons defense counsel should have anticipated the Supreme Court's decision, and that counsel could have negotiated for an exception to the waiver.

7

There is no record of the parties' negotiations, and the realities of plea bargaining would have made a carve-out for such probation conditions unlikely. More importantly, it does not follow that the existence of a conflict in the courts of appeal puts defendants on notice that the law will change in their favor. Courts of appeal regularly engage in disagreements that the Supreme Court never resolves, and the lack of consensus between the courts implies that there was not a new rule that Castellanos could have anticipated. Further, the dissent understates the impact of *Ricardo P.*, which did more than simply apply the principles of *Lent* in a predictable fashion. (See *Ricardo P.*, *supra*, 7 Cal.5th at p. 1130 [majority's opinion departed from existing methodology for reviewing probation conditions] (conc. & dis. opn. of Cantil-Sakauye, C.J.).)

We conclude the waiver was not a knowing, intelligent waiver of the right to appeal from the challenged probation condition. We therefore consider the merits of the claim.

## B. Overbreadth of the Electronic Search Probation Condition

The trial court imposed an electronic search probation condition materially identical to the probation condition at issue in *Ricardo P.,* which held the condition was overbroad based on the circumstances of that case. Castellanos contends *Ricardo P.* compels the same outcome here. The Attorney General argues that the probation condition in this case is not overbroad under *Ricardo P.* because the record shows the condition was related to the offense for which Castellanos was convicted. We agree with the Attorney General.

### 1. Legal Principles Governing Probation Conditions

A condition of probation will not be held invalid unless it: (1) has no relationship to the crime of which the offender was convicted; (2) relates to conduct which is not in itself criminal; and (3) requires or forbids conduct which is not reasonably related to future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486.) This test is conjunctive; all three prongs must be found before a reviewing court will invalidate the condition. (*People v.*

8

*Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)  The third prong, relating to future criminality, "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition."  (*In re Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.)  This prong "requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality."  (*Id.* at p. 1121.)

We review conditions of probation for abuse of discretion, looking to whether the condition is " 'arbitrary or capricious' or otherwise exceeds the bounds of reason under the circumstances."  (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118, quoting *Olguin*, *supra*, 45 Cal.4th 375 at p. 384.)

### 2.  *The Probation Condition Is Not Overbroad*

The Attorney General argues that the challenged probation condition should not be invalidated under the first prong of *Lent* test because it is related to the offense for which Castellanos was convicted.  The probation report states that police found three cell phones in the car, and Castellanos admitted two of the phones were his.  On this basis, the trial court found that the search condition was "relevant to the charges in this matter."  The court further reasoned that cell phones are frequently used in transportation and possession for sale of drugs.

We conclude the trial court's ruling was not an abuse of discretion under *Ricardo P.*  In that case, the juvenile was declared a ward of the court after admitting he participated in two residential burglaries.  (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1115.)  Ricardo admitted he was smoking marijuana around the time of the offenses but said he stopped smoking marijuana after his arrest.  (*Id.* at p. 1116.)  The juvenile court imposed a probation condition requiring Ricardo to submit any electronic devices in his control to warrantless search.  The juvenile court found the condition reasonably related to future criminality because " 'minors typically will brag about their marijuana usage . . . by posting on the Internet.' "  (*Id.* at p. 1117.)

9

The California Supreme Court held the condition was invalid, but the court based this holding on the third prong of the *Lent* test regarding future criminality. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1116.) The court held this prong requires a "degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.) Applying that standard, the court found the condition lacked proportionality because it imposed a high burden while the legitimate interests served were low. The court, however, did not "categorically invalidate electronics search conditions." (*Id.* at p. 1128.)

The trial court here imposed the probation condition based on the facts of the offense, which is covered under the first prong of the *Lent* test. The trial court's findings on this point are supported by the record. As to the third prong of the *Lent* test, the relationship between drug distribution and the use of cell phones or electronic devices is more than just "abstract or hypothetical." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1121.) The court in *Ricardo P.* held that an electronic search condition may be upheld on these grounds. (*Id.* at pp. 1128-1129, citing *Appleton, supra*, 245 Cal.App.4th at p. 724, [finding electronics search condition reasonable because the defendant lured victim using social media].) Given the circumstances of this case, the probation condition is not overbroad under the *Lent* test as applied by *Ricardo P.*

As part of his overbreadth challenge, Castellanos also asserts the probation condition was unconstitutionally vague.[3] He contends the condition makes it "impossible to tell where the probation officer's authority to search ends," and he claims it is not clear

---

[3] Appellant's opening brief uses the phrase "overbroad and vague" in the portions challenging overbreadth. While the two terms are related, courts distinguish between overbreadth and vagueness. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1115.) Based on the substance of the arguments and citations in appellant's briefs, we primarily treat this appeal as a challenge on overbreadth grounds. But we briefly address the vagueness claim because Castellanos briefly argued it.

whether he must open applications for the probation officer or simply provide the passwords for them.

"The vagueness doctrine ' "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " [Citations.]' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*)

As the Attorney General points out, the express language of the probation condition makes clear that Castellanos must simply provide access to his cell phones or electronic devices and "provid[e] all passwords to any social media accounts and applications upon request." The condition does not require him to open applications for the probation officer, and it limits the officer's search to cell phones and electronic devices. This language is sufficiently precise for Castellanos to know what is required of him, and for the court to determine whether he has violated the condition. We conclude the condition is not unconstitutionally vague. (See *In re Malik* (2015) 240 Cal.App.4th 896 [rejecting vagueness challenge to an electronic search probation condition].)

For the reasons above, we conclude Castellanos's claim is without merit, and we will affirm the judgment.

### III.    DISPOSITION

The judgment is affirmed.

11

_____
Greenwood, P.J.

I CONCUR:

_____
Grover, J.

The People v. Castellanos
No. H045792

DANNER, J., Concurring and Dissenting

I concur in the majority opinion that the probation condition challenged here is neither overbroad nor unconstitutionally vague. However, I would not reach that question because Castellanos in his written plea agreement voluntarily waived his right to bring this appeal. Consequently, I would dismiss the appeal without reaching the merits.

Castellanos signed a written plea agreement and separately wrote his initials next to several paragraphs. In the "SPECIFIED WAIVERS" section of the agreement, Castellanos initialed paragraph 14, titled "Appeal and Plea Withdrawal Waiver," which states: "I hereby waive and give up all rights regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court. I agree not to file any collateral attacks on my conviction or sentence at any time in the future. I further agree not to ask the Court to withdraw my plea for any reason after it is entered."

Castellanos also initialed the provision in the "DEFENDANT'S STATEMENT" section, which states: "I offer my plea of guilty or no contest freely and voluntarily and of my own accord. . . . [¶] I have read, or have had read to me, this form and have initialed each of the items that applies to my case. I have discussed each item with my attorney. By putting my initials next to the items in this form, I am indicating that I understand and agree with what is stated in each item that I have initialed. . . . I understand each of the rights outlined above and I give up each of them to enter my plea."

Under the "ATTORNEY'S STATEMENT" section, defense counsel placed her signature below the paragraph stating: "I have reviewed this form with my client and have explained each of the items in the form, including the defendant's constitutional rights, to the defendant and have answered all of his or her questions concerning the form and the plea agreement. . . . [¶] I concur in the defendant's decision to waive the above rights and enter this plea, and believe the defendant is doing so knowingly, intelligently,

and voluntarily."  During the plea colloquy, the trial court asked Castellanos a number of questions.  Among other inquiries, the trial court asked, "Do you also give up your rights to appeal as indicated by your initials on paragraph 14?"  Castellanos answered, "Yes."  The trial court found that Castellanos knowingly, intelligently, and voluntarily waived his rights and accepted Castellanos's plea.

Castellanos did not seek in the trial court to withdraw from his plea agreement, and he acknowledges on appeal that he does not challenge the validity of his plea.  Castellanos's right to appeal his conviction is a matter of statute, not constitutional right.  His express waiver of his right to appeal in the negotiated plea agreement is valid and enforceable, provided that the waiver is knowing, intelligent, and voluntary.  (*People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 399–400; *People v. Panizzon* (1996) 13 Cal.4th 68, 79–80 (*Panizzon*).)

To be knowing, intelligent, and voluntary, Castellanos must have understood the " 'nature of the right and how it would likely apply *in general* in the circumstances' "; he need not have known " 'the *specific detailed* consequences of invoking it.' " (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 189, fn. 18, quoting *United States v. Ruiz* (2002) 536 U.S. 622, 629.)  "Absent something in the record raising a doubt defendant understood and knowingly waived his appeal rights, a written waiver of those rights by defendant, coupled with defendant's and his attorney's attestations to the court that defendant understood and voluntarily relinquished each right, is sufficient to establish a defendant's waiver of his right to appeal was knowingly, voluntarily, and intelligently made." (*Panizzon*, *supra*, 13 Cal.4th at pp. 83–84.)

Castellanos waived his appellate rights as part of his written plea agreement, which he personally initialed and about which his attorney advised him.  In addition, during the plea colloquy the trial court specifically asked Castellanos whether he waived his appellate rights as indicated in the written plea agreement, and Castellanos replied that he did.  Under these circumstances, I would conclude Castellanos's waiver of the

2

right to appeal was knowing, intelligent, and voluntary. (See *Panizzon*, *supra*, 13 Cal.4th at p. 84.)

The majority agrees that Castellanos entered into an appellate waiver but decides that the waiver was not knowing and voluntary because Castellanos could not have known that he was giving up his right to challenge a probation condition based on a future change in the law. In reaching that conclusion, the majority relies on *People v. Wright* (2019) 31 Cal.App.5th 749. However, that case addressed a future *statutory* change of which the parties were unaware at the time of the plea agreement. (*Id*. at p. 756 [referring to a post-plea statutory amendment to Health & Saf. Code, § 11370.2 and observing "[n]othing in the record suggests that the parties considered or addressed the possibility that future legislation might abolish the required three-year enhancement for Wright's prior felony drug conviction."].) The majority here extends the analysis in *Wright* beyond a future legislative change to what it identifies as a "subsequent change in law" (maj. opn., *ante*, at p. 6)—namely the California Supreme Court's decision in *In re Ricardo P*. (2019) 7 Cal.5th 1113 (*Ricardo P*.).[1]

Whether a future legal change, made by courts rather than the legislative branch, can be so significant or unanticipated as to render an appellate waiver unknowing and involuntary is not a question we must confront in this case. The purported unknowable legal development the majority identifies was neither unanticipated nor a change. On its own terms, the California Supreme Court's decision in *Ricardo P.* was simply an application of the principles articulated in *People v. Lent* (1975) 15 Cal.3d 481. (See *Ricardo P.*, *supra*, 7 Cal.5th at p. 1119 ["This case turns on whether the electronics search condition satisfies *Lent*'s third prong — that is, whether it ' "requires or forbids

[1] In support of its conclusion that Castellanos's appellate waiver was not knowing and voluntary due to a subsequent change in the law, the majority also cites *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662, but that case addressed only the scope of the particular appellate waiver, and did not address the effect of subsequent legal changes.

3

conduct which is not reasonably related to future criminality." ' (*Lent*, *supra*, 15 Cal.3d at p. 486.]"; *id*. at p. 1122 ["*Lent*'s requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition. [Citations.] . . . . [¶] Such proportionality is lacking here."].)

Moreover, the applicability of the principles announced in *Lent* to probation conditions related to searches of electronic devices was the subject of published cases in California well before Castellanos entered into his plea agreement in 2018. (See, e.g., *People v. Appleton* (2016) 245 Cal.App.4th 717, 723–724; *In re Malik J.* (2015) 240 Cal.App.4th 896, 901–903; *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1176–1177.) That the California Supreme Court might address this issue could hardly have been a surprise in 2018 to any attorney practicing criminal law in this state. The point is not that Castellanos should have anticipated the California Supreme Court's precise holding in *Ricardo P.*, but that he (or at least his counsel) would have known the legality of probation electronic search conditions was—and, indeed, still is—an evolving area of California law.

Castellanos chose to enter into a written plea agreement that gave him the benefit of probation rather than a prison sentence. As part of the bargain, he agreed to give up his statutory right to appeal his sentence. Castellanos elected not to negotiate for any exceptions to the appellate waiver—for example, a carve out for a challenge to the electronic search condition.

That Castellanos's appellate counsel identified the electronic search condition as a possible avenue for challenging his sentencing does not render unknowing and involuntary Castellanos's waiver made in the trial court. " 'The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.' " (*Panizzon*, *supra*, 13 Cal.4th at p. 86 [quoting *Brady v. United States* (1970) 397 U.S.

742, 756–757].) "This logic applies with equal force to dispel any notion that the subsequent unfolding of unknown or unforeseen events somehow renders a waiver of appellate rights unintelligent or otherwise defective at the time it was given." (*Panizzon*, at pp. 86–87.)

Having entered into a contract that does not allow him to bring this appeal, Castellanos seeks relief from this court on the ground that he could not have anticipated the California Supreme Court's application of *Lent* to electronic search conditions. Under the circumstances of this case, I am not persuaded.

I would also conclude that the scope of the appellate waiver encompasses the challenge Castellanos makes in this appeal. With respect to Castellanos's contention that his appellate waiver does not extend to sentencing errors, a different panel of this court rejected a similar argument in *People v. Becerra* (2019) 32 Cal.App.5th 178, which involved the same waiver of rights form Castellanos signed. Like Castellanos, the defendant in *Becerra* argued that his challenge to the custody credit error was not within the scope of the appellate waiver because it was not expressly mentioned therein. (*Id.* at p. 190.) This court rejected that contention. "Although defendant's appellate waiver does not contain the phrase 'custody credits,' the appellate waiver does expressly encompass 'all rights regarding state and federal writs and appeals,' including 'but . . . not limited to, the right to appeal . . . the judgment' and 'any collateral attacks on [the] conviction or sentence at any time in the future.' By expressly covering 'all . . . appeals' and 'any collateral attacks' by defendant, including appeals and collateral attacks with respect to the 'judgment' and 'sentence,' the parties clearly intended a broad waiver covering any and all claims that defendant might try to later assert regarding his sentence or the judgment." (*Ibid.*) After all, the purpose of negotiating a waiver of the right to appeal a sentence is to preclude future claims of sentencing error.

5

For these reasons, I respectfully dissent from the majority's decision not to dismiss this appeal.

_____

Danner, J.

*People v. Castellanos*
**H045792**

Trial Court:                       Monterey County Superior Court
Superior Court No.: 18CR002682

Trial Judge:                       The Honorable Julie R. Culver

Attorney for Defendant and Appellant      J. Wilder Lee
Frank Jonathan Castellanos:             Sixth District Appellate Program

Attorneys for Plaintiff and Respondent     Xavier Becerra,
The People:                             Attorney General of California

                                      Jeffrey M. Laurence,
                                      Senior Assistant Attorney General

                                      Eric D. Share,
                                      Supervising Deputy Attorney
                                      General

                                      Dorian Jung
                                      Deputy Attorney General

People v. Castellanos
H045792